Good morning, Your Honors. Juan Murray on behalf of the Appellees. May it please the Court. We're here, Your Honors, on a paradigmatic standard garden variety contract case, which unfortunately turned into a major and exorbitant fraud claim, resulting in exorbitant damages, including punitive damages. This is precisely the type of case that the Economic Laws Rule was designed to prohibit. The rule, as Your Honors know, dictates that absent some independent duty, some independent resulting harm, when you sue in contract, you cannot recover. Right. If you have a breach of contract. But here, there's a finding of fraud. Fraud is a tort, independent of the contract. Why doesn't this fall outside the Economic Laws Rule? Because, Your Honor, the same allegations and the same findings, if you take a look at the opinion, the Court's opinion denying a Rule 50 motion, if you take a look at that opinion and you take a look at the jury's findings. Well, no, they are different. The breach of contract is the defendant didn't come up with the money. They were supposed to come up with money. They didn't come up with money. Breach of contract. Fraud is, they told us they were flush with money and there was ready cash. We counted on it and so signed the contract with her. I will say her because it's her, it, you know, the whole entity. We signed with her rather than going with a bank that was offering financing. And that was the fraud. That was the tort. And so in addition to the fact that she didn't come up with the money, she defiled us. Why aren't those two different things? No, no, no. One is covered by the Economic Laws Rule and the other one isn't. With all due respect, I don't think they are distinct. If you take a look at the opinion that we're appealing... I'm sorry. I just explained how they're distinct. Why don't you tell me why... Because the... You could have one without the other, right? You could have fraud without a contract and you certainly could have a contract without a fraud. I have two points, Your Honor, in response to your question. Number one, the allegations and the findings, the specific findings that the Court relied upon to deny our motion, the representations that my client made with respect to financing the film, those are the same representations that were inherent in the contractual representations and in the contract. But to show breach of contract, all you'd have to have shown is... All they would have said, there was pure breach of contract claim. To win, they would have to show she didn't come up with the money when she was required to buy the contract. Breach of contract. It doesn't matter what was represented or anything else. She didn't come up with the money.  Your Honor, the second point... Right? To show fraud, you have to show actual false representation, scienta, you know, the whole business, right? Five elements. But, Your Honor, the second response to your question is you look at the injury. That's what Robertson Helicopter holds and that's what the exception to the economic loss rule is always looking at the resulting injury. Here, there's perfect identity and symmetry between the damages that they incurred, the economic losses that they incurred as a result of the breach of contract, as well as a result of their tort claims. There's absolutely nothing different, unlike... But why does that matter? You might suffer additional injuries for breach of contract, but you are then limited by the economic loss rule. So the fact that you suffered reputational damages or, you know, other things like that, you just can't recover for them under breach of contract. It's all you have is a breach of contract claim. You might have more damages, but you just can't recover for them. If you have a fraud claim, you can't recover for the other stuff. But here they didn't make any allegations about reputational injury or any other type of injury. If you look at the actual testimony... Well, I thought they did. I thought it was testimony about how they couldn't, you know, once a film gets tarnished like this... No, Your Honor, that was all in the appellate briefs. When you take a look at the expert evidence... It's on the record? I saw the expert talk about how films get tarnished, you know, how a big star like Tavolta walks away from it. You know, people think the whole deal stinks, and, you know, they... I mean, I don't know. What the expert did, and that goes to the second argument on damages, is all he did was a very formulaic application of the projections that Hannibal Production had developed in connection with the film and mechanically applied them to the specific contractual provisions. So, again, if you take a look and you walk through the different components of the damages, it is for lost revenue associated with the domestic distribution rights. It is for lost revenue associated with the international distribution rights. It is a producer's fee. It's expenses incurred in connection with producing the film. There's a perfect identity in damages that they sought and were awarded by the jury. And that's where I go with respect to the injury and why it has to be independent. If I may, very quickly, with respect to Robinson Helicopter, the court there, and I think that's a very instructive case in this situation, the court there held that the reason why the economic law school did not apply in that case was because the plaintiff was being exposed to independent third-party liability. And that was because as a result of the manufactured products, they could be sued, God forbid, if the helicopters did not function. They could be independently sued by the owners and the end users of the helicopters. And then in the other context in which the economic law school has not been applied, similarly hold that there's some independent potential resulting injury. What kind of injury would we have had here to sustain that then? For instance, Judge Byvie, they would have alleged that John Travolta or Ms. Dawson or somebody else relied on this contract or relied on the representations and they were now going to sue Hannibal Productions because Hannibal Productions was not going to be performing another contract. So if some third party had sued them, then we would have tort claims, but not if they don't? So it all depends on whether Travolta decides to sue them or not? It all depends, Your Honor, if they're exposed to some independent potential third-party liability or physical harm or property damage or whether there's a violation of public policy laws in Tambly where the plaintiff in a contract dispute was terminated because he refused to violate antitrust laws. So there's always some independent alleged injury, an independent duty, separate and above from what is represented in the four corners of the contract. And here all you're dealing with is the representations that were made in the four corners of the contract, nothing more. In Robinson Helicopter, were the damages limited by the amount that the third party could recover or had recovered? All the court said was that the economic law school did not apply in that contract. And we had punitive damages in Robinson, didn't we? They sought punitive damages. That tells us then that the amount of damages that the helicopter company can recover is not bound by whatever their liability is to a third party. They're not bound? As long as they're potentially liable to a third party, the damages that can be awarded in the principle case is not bound, it's not confined, it's not cabined by whatever their potential exposure is because you can collect punitives, which means that even if they were only liable for $1 to a third party, then they could collect millions of dollars in punitive damages. So they have nothing to do, no relationship whatsoever to do with their exposure on the third party claim. That's correct, Your Honor. That's a little tiny tail wagging a very, very big dog. I understood, but that allegation wasn't made here and there was no proof and no evidence introduced here that they were exposed to even $1 of independent third party liability or any of the other contexts in which the economic loss rule has been found by courts not to apply, such as property damage or physical injury or emotional distress or some violation of an independent duty such as the employment claim. So your reading of when the economic loss rule doesn't apply is when there's possible exposure to a third party? Correct, or some of these other contexts, property damage. And do you have any California cases that actually tell us that or just the fact that that was the situation in Robinson? No, there are actual California cases that do tell us that. And, in fact, this Court in Astrium affirmed a lower court decision in which the lower court prohibited under the economic loss rule tort claims for precisely this rationale. There was an Astrium decision by the Ninth Circuit affirming that dismissal. And the Astrium court, the lower court, applied Robinson-Helicopter in that context. Now, in your brief, you seem to rely on the California case, the Oracle case. But here we have a deliberate misrepresentation. Doesn't that distinguish Oracle? No, it does not, Your Honor. And that goes to a fundamental point. And I think the law, let's be frank about it. The law here is confused. And you have two different strains. And this Court could be very useful in clarifying the law here. You have one strain of cases that's Astrium, Butler-Rupp, Intellect Graphics, Multifamily, Oracle that you referenced, Your Honor, Schuster, and Stearns. All those are California cases, district court cases, and appellate cases, holding that the economic loss rule applies in the context of tort, intentional torts. And then you have another strain of cases, California cases, Eldorado, Prisipnovsky, Western Emulsions, which holds as a categorical matter that the economic loss rule does not apply in fraudulent inducement cases. So then the dichotomy here and the misunderstanding, the problem here is that a subset of courts, the minority of courts, have interpreted Robertson Helicopters as standing for the proposition, and earned it before Robertson Helicopters, standing for the proposition that the economic loss rule as a categorical matter does not apply in inducement cases. We believe that's absolutely wrong. And we believe that the majority of the cases, including Oracle, and most particularly here, Astrium, in which you affirm the lower court decision on precisely this point, is the better way to go, which is that there's no categorical exception to the applicability of the economic loss rule. Otherwise, you're going to convert every – you're going to open the floodgates. If you affirm the ruling here, you're going to open up the floodgates in converting any standard garden variety prototypical contract dispute into a major fraud case with the potential exposure of punitive damages. If you have fraud. I mean, lots of contract cases don't involve fraud or allegations of fraud. But let's get back to damages. I'm looking here at page A124 of the excerpts. It's page 138 of the Task of Devolving the Expert's Testimony. The question is, in your experience, in your opinion, Mr. Morton, if a motion picture such as we have here involving John Travolta fails to take place, does it affect the credibility, the reputation, and the fortune business activities, the future business activities of an independent producer like Hannibal Pictures? There's an objection to the rule, and the answer is yes. Your Honor, but they didn't ask for damages, for reputational harm. All they asked for was the contract damages. If you take a look at the verdict form, if you take a look at all the different counts in the verdict form, if you take a look at the- You didn't wait for my question. My apologies. You just sort of went into overdrive there. What you said is that there was no evidence of damages here beyond breach of contract, and I asked you this question, and you said, oh, this was all in the appellate briefs. It wasn't in the record. I asked you about this specific question, and your answer was, oh, no, it wasn't in the record. They just made it all up on appeal. But that's not quite right, is it? I mean, there is this evidence here that speaks exactly to this kind of damage, right? Your Honor, what I meant to say was that they didn't seek damages until- Why don't you answer my question, and then you can tell me what else you meant to say. Did you say that? I said that there was no evidence that they had sought damages for reputational harm. That's correct, Your Honor. I don't believe that that's a reflection of seeking reputational damages. He's just simply testifying that it- I thought you said there was no evidence. Of reputational damages. Yes. That's correct, yes, Your Honor. But there is evidence. Okay. I respectfully disagree that that's evidence of reputational damage. Okay, why don't you explain to me why not, because I think there is, and so this is your chance to talk me out of it. Sure. Why isn't the question and answer like this, evidence of reputational harm, when he asks the question, does it affect the creditability, the reputation, and the future business activities of independent producers like Handle Pictures? Answer, yes. So why is that not evidence that it affects reputation, creditability, which I gather means ability to get credit, not being a credible person, or the business prospect? Why isn't this evidence of exactly that? I think it's evidence that it could impact the credibility and the reputation, but they didn't ask for damages based on that. They didn't ask for reputational damages. All they asked was for contractual damages, and if you take a look at subsequent pages of the expert's testimony, all he does is- So just so I'm sure, your position now is that they didn't ask for these damages, although they had, you now agree, that there is evidence supporting such damages. Yes, sir. Just so I understand your position. Yes, sir. Okay. And that there was no independent injury here other than damage, other than the contractual damages, because that's all they relied upon. And Mr. Mortock, all he did was to do a systematic, mathematical, formulaic application, as you read through his testimony, of the damages, issue by issue, item by item, with respect to, he tied them up to each contractual provision, lost revenues with respect to foreign sales and U.S. sales. You make it sound so perfunctory, but the jury must have bought it. Your Honor, but there's governing precedent here, Kid's Universe and Parler Enterprises, and in Parler Enterprises, the California Supreme Court reversed a jury verdict, awarding $6.6 million, the same amount that was approximately awarded here, based on the same argument that I'm making here before you today, Your Honor, and that is, and the evidence there, the expert evidence there, was substantially more systematic and detailed than it was here. Indeed, they presented a lot more evidence about the projections, they presented a lot more evidence about existing stores in Parler that were actually operational and that were the predicate for some of the revenue projections, the analysis. Thank you. I'm sorry? I said thank you. Thank you very much. We'll hear from the other side. Thank you, Your Honor. It's good morning. Andrew Chang for Plaintiff Hannibal Pictures. First of all, there is no, absolutely no confusion in the law. The counsel simply misreading Robinson Helicopter and the Erlich case and all the other California cases, the Green Court and Court of Appeal, would simply say that the economic loss rule does not apply to fraud and other intentional tort cases. Now, remember that the evolution of the economic loss rule comes from the law of negligence and strict product solubility. Certainly those are torts, and the courts painstakingly went through the fact that we don't want to avoid the distinction between those two areas, tort and contract. And certainly negligence cases, if you've got a negligent breach of contract or an inadvertent breach of contract case, you don't want to obliterate that distinction. Counsel, opposing counsel seem to depend on the Oracle case. How would you distinguish Oracle? Well, Oracle case, first of all, as far as I remember, does not apply California law. And to the extent it did, it did not apply it to a fraud setting. It did not discuss what I just went through with you with the California Supreme Court and Courts of Appeal. The Oracle case simply doesn't apply, just like a lot of the cases that they cite, which sound good because they talk about tort versus contract and economic loss damage and physical injury damage. But the fact is it has no application in this setting. This is a commercial contract with fraud in the inducement on one hand and fraud in the actual performance of the contract. And on that second point, this is just like Robinson Helicopter. It's even better because we have fraud inducement here and we didn't have it in Robinson. But if you remember, Robinson talks about you can even have fraud while you're performing the contract, and that is separate from the breach of contract, and therefore the economic loss rule simply doesn't apply. In that case, the fraud was in the defendant making affirmative misrepresentations about the product, assuring them that the product was not defective, preventing the plaintiff from going about its remedies. But most importantly, it is true, the Robinson court said, and by the way, it exposed the plaintiff to other liability, to personal liability. If a helicopter had crashed because of this defective part, and if there had been suits brought against the plaintiff in this contract, then that exposure is definitely different kind of damage than pure economic loss from a breach of contract. That's exactly what we had here, and I think Judge Bybee pointed it out. You don't need an actual third party to sue. You didn't have that in Robinson Helicopter. It was the exposure to potential liability, and that's exactly what we had in this case. Yes, John Travolta, as far as we know, did not sue for the inability to provide the funds, and then he felt that he won away and the project collapsed. He didn't sue, but it was the exposure to personal liability from that lawsuit, which was testified to in the record by Mr. Rionda, the plaintiff, but also his lawyer, who said he was scared to death that right around the corner was going to be a lawsuit served by John Travolta, who, from what I can see in the record, had every right to bring such an action because they had made a deal with him. It was binding, and he postponed his shooting of wild hogs, which was going to be in the slot that Fast Flash was going to be shooting in, but he postponed that specifically to take on this project because he really passionately wanted to do this film. So this is not a fly-by-night, want-to-be, prototypical Hollywood kind of failed project, not at all, nor is this a prototype economic breach of contract case because this, in fact, is the quintessential kind of fraud that takes you out of contract, that puts you into tort remedies, and not just tort remedies that you get with negligence and strict liability, but actual benefit of the bargain and lost profits damages, which is just what happened in this case. This is really an ironclad case, we think, for liability, for damages. You know, I find it a little strange that your clients would enter into this kind of contract without getting financials. I mean, do you just sort of take somebody's word for saying, I've got $11 million in the bank? No, they didn't do that. You know, if somebody walked up to you in the street and... I mean, if you're sort of engaged in any business other than Hollywood. Sure. You know, let's say you were renting... You're a lawyer in Pasadena, right? Yes. And when you go to rent office space, right? Yes. They ask you for financials, right? Yes. You know, they don't just take your word for it that you can pay the rent. This is a much more high-stakes enterprise. I just find it very strange that when a defendant says, really, I've got tons of cash in the bank, it's just sort of believed. Well, I think there was more than that. It wasn't just her word. She had provided documentation to them, and albeit not exactly maybe what other people... I think there's a lot of... A bank certainly would have provided. A lot of wishful thinking goes on in Hollywood. Well, perhaps, but this was more than wishful thinking. And, of course, wishful thinking when it's accompanied by fraud, and certainly reasonable fraud. I understand. You know, the jurors saw this, but I personally find it very strange. Well, sometimes the best kind of fraud ends up in that kind of situation. Well, it's just a made-up, right? Yeah. Anyway, unless the Court has any other questions. Okay, thank you. Thank you. We'll give you a minute for rebuttal. Your Honor, just two or three quick ones. One is I think if you affirm here you're going to open up the floodgates to converting any breach of contract claim into a fraud claim with resulting potential punitive damages. Number two, the law is confused here in this area. In some cases, and the cases in which the lower court relied, do believe that there's a categorical exception to fraudulent inducement cases with respect to the applicability of the economic loss rule. I think that is incorrect. That's not what Robinson Helicopter stands for or Ehrlich or any of their progeny. Number three, with respect to here and the fraud allegations and the representations, and we're appealing, after all, from the Rule 15 motion denial and the district court's opinion in that order. And if you take a look at the district court's opinion in that order, all of the representations and resulting damages that the court relies upon and, by the way, the court also concludes that there's a categorical exception to the applicability of the economic loss rule in the context of fraudulent inducement cases, which is, as a matter of law, incorrect and I think needs to be remediated by the court. But in addition, the court relies on all of the same representations that you were asking about. I think this is the point you started out with. And then finally, on damages. I think we're done. Thank you. The case is argued. We'll stand for a minute. We'll adjourn. All rise. This court for this session stands adjourned.
judges: Kozinski, Nelson D. W., Bybee